Robert J. McKennon (SBN 123176) *rm@mckennonlawgroup.com*
Larry J. Caldwell (SBN 88867) *lc@mckennonlawgroup.com*
**McKENNON LAW GROUP PC**
20321 SW Birch Street, Suite 200
Newport Beach, California 92660
Phone: 949-387-9595 | Fax: 949-385-5165

Attorneys for Plaintiff Michael Foglietta

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION

| | |
|---|---|
| MICHAEL FOGLIETTA,<br><br>          Plaintiff,<br><br>vs.<br><br>THE LINCOLN NATIONAL LIFE INSURANCE COMPANY; and DOES 1 through 10, inclusive,<br><br>          Defendants. | Case No.:<br><br>Action Filed:<br><br>Trial Date:<br><br>**COMPLAINT FOR BREACH OF FIDUCIARY DUTY UNDER ERISA, FOR EQUITABLE RELIEF, INCLUDING DECLARATORY RELIEF AND INJUNCTIVE RELIEF; ATTORNEYS' FEES** |

[Filed Concurrently With:
- Civil Cover Sheet;
- Summons; and
- Certification of Interested Parties]



Case No.:

## JURISDICTION AND VENUE

1. Plaintiff Michael Foglietta ("Plaintiff" or "Mr. Foglietta") brings this action to enjoin unlawful conduct by a plan fiduciary pursuant to Sections 502(a)(3)(A) and 502(a)(3)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. Sections 1132(a)(3)(A) and (a)(3)(B). This Court has subject-matter jurisdiction over Plaintiff's claim pursuant to ERISA Section 502(e) and (f), 29 U.S.C. Section 1132(e) and (f), and 28 U.S.C. Section 1331.

2. Venue lies in the Central District of California, Southern Division, pursuant to 28 U.S.C. Section 1391, because Defendant The Lincoln National Life Insurance Company ("Lincoln National") "resides" in this District, in that it is licensed to do business and doing business in this District and Division with sufficient regularity to support personal jurisdiction over Lincoln National.

## THE PARTIES

3. Mr. Foglietta is an individual who, at all times relevant to this action, was a participant, as defined by ERISA Section 3(7), 29 U.S.C. Section 1002(7), in the employee welfare benefit plan (the "Plan" or "Policy") established by his former employer Systems Engineering Associates Corporation ("Systems Engineering"), which Plan is at issue in this action.

4. Lincoln National is a life insurance company that insures and administers the long-term disability Plan, including claims decisions and payment of disability benefits to Plan participants such as Mr. Foglietta.

5. The true names and capacities, whether individual, corporate, associate or otherwise, of the defendants named herein as DOES 1 through 10, inclusive, are unknown to Plaintiff at this time, who therefore sues DOES 1 through 10 by fictitious names and will ask leave of the Court to amend this Complaint to show the true names and capacities of DOES 1 through 10 when the same are ascertained; DOES 1 through 10 are sued as principals and/or agents, servants, attorneys, or employees of said principals, and all of the acts performed by them were within the



course and scope of their authority and employment. Plaintiff is informed and believes and thereupon alleges that each of DOES 1 through 10 is legally responsible in some manner for the events referred to herein, and directly and proximately caused the damages and injuries to Plaintiff as hereinafter alleged.

## FACTUAL BACKGROUND

### Mr. Foglietta's Long-Term Disability Claim

8. In 2003, Mr. Foglietta suffered an aneurysm. As a result, Mr. Foglietta applied for long-term disability benefits under the Plan. In 2004, Lincoln National accepted Mr. Foglietta's long-term disability claim, finding that he was totally disabled under the Plan, both during the initial two-year "your occupation" period, and during the subsequent "any occupation" period.

9. Lincoln National paid Mr. Foglietta long-term disability benefits for over sixteen years, commencing on or about March 7, 2004. Originally, the benefits were $2,667 per month. At Lincoln National's suggestion, and as required by the Plan, Mr. Foglietta applied for Social Security Disability Insurance Benefits ("SSDI") in or around February 2004. After several denials and subsequent appeals, in May 2007 he was finally awarded SSDI Benefits of $1,010 per month, retroactive to June 2004. These retroactive benefits totaled $37,027.50.

10. As a result of the SSDI Benefits, Lincoln National reduced Mr. Foglietta's monthly long-term disability benefit payments to $1,657 per month. Lincoln National also claimed a right to reimbursement of its overpayment of $30,159.30 in long-term disability benefits paid during the period prior to the final determination granting SSDI Benefits to Mr. Foglietta. On or about June 14, 2007, Mr. Foglietta paid the full amount of the claimed overpayment to Lincoln National.

11. Mr. Foglietta's daughter was born before he went to work for Systems Engineering   Mr. Foglietta told Systems Engineering about his daughter during his employment. Systems Engineering's knowledge of his daughter was imputed to Lincoln National at all relevant times. Mr. Foglietta also discussed his daughter



with Lincoln National claims representatives he was dealing with on multiple occasions over the years.

12. In 2016, Mr. Foglietta's son was born.

13. Mr. Foglietta alleges on information and belief that at all times between 2004 and October 2020, Lincoln National had the ability to determine from the Social Security Administration whether either of Mr. Foglietta's dependents were receiving dependent social security benefits because of his disability. In this regard, on or about February 21, 2006, at Lincoln National's request, Mr. Foglietta provided Lincoln National a signed "Consent for Release of Information" form authorizing Lincoln National to obtain information from the Social Security Administration regarding Foglietta's SSDI Benefits accounts. Mr. Foglietta alleges on information and belief that at any time between February 21, 2006 and October 2020, if Lincoln National had submitted an appropriate request to the Social Security Administration together with the signed Consent, Lincoln National could have obtained Mr. Foglietta's Master Beneficiary Record. His Master Beneficiary Record would have shown whether any of Mr. Foglietta's dependents were receiving benefits because of his disability, the monthly amount of those benefits, and the number of months for which the benefits had been paid. Mr. Foglietta alleges on information and belief that during the period from February 21, 2006 through at least June of 2020, Lincoln National failed to obtain the Master Beneficiary Record for Mr. Foglietta.

14. In the alternative, Mr. Foglietta alleges on information and belief that Lincoln National obtained the Master Beneficiary Record at some point, but, for some unknown reason, failed to make a deduction from Mr. Foglietta's monthly long-term disability payments in relation to SSDI Benefits awarded to his dependents.

15. During the time period from February 21, 2006 through June 17, 2020, Lincoln National also failed to ask Mr. Foglietta whether his dependents were

1  receiving SSDI Benefits as a result of his disability –even though Lincoln National
2  knew during this entire time period that Mr. Foglietta had a minor daughter.

### Lincoln National's Long Belated Claim for Reimbursement
### and Collection Threats

5      14.    During the time period from February 21, 2006 through June 17, 2020,
6  Lincoln National failed to request reimbursement by Mr. Foglietta of any past
7  deductions it failed to make from his long-term disability benefits.  On or about June
8  18, 2020, Lincoln National sent a demand letter to Mr. Foglietta, a true and correct
9  copy of which is attached as EXHIBIT 1 and incorporated by this reference (the
10 "June 2020 Demand Letter"). In the June 2020 Demand Letter, Lincoln National
11 demanded that Mr. Foglietta reimburse Lincoln National for $67,206 in alleged
12 overpayment of disability benefits for the period June 1, 2004 through June 7, 2020
13 allegedly resulting from SSDI Benefits received by Mr. Foglietta's dependent(s)

14     15.    On or about October 16, 2020, Lincoln National sent a second demand
15 letter to Mr. Foglietta, a true and correct copy of which is attached as EXHIBIT 2
16 and incorporated by this reference (the "October 2020 Demand Letter"). In the
17 October 2020 Demand Letter, Lincoln National demanded that Mr. Foglietta
18 reimburse Lincoln National for $135,444.20 within 15 days. National Lincoln did
19 not explain why the amount demanded had increased from $67,206 and did not
20 explain what time period of disability benefits the $135,444.20 in alleged
21 overpayments pertained to.  Lincoln National claimed that the alleged overpayments
22 resulted from SSDI Benefits received by Mr. Foglietta's dependent(s).

23     16.    Effective December 30, 2020. Lincoln National terminated Mr.
24 Foglietta's long-term disability benefits, purportedly because of its determination
25 that he was no longer disabled.  Mr. Foglietta has not received any disability
26 benefits payments from Lincoln national since December 30. 2020.

27     17.    On or about February 17, 2021, Lincoln National sent a third demand
28 letter to Mr. Foglietta, a true and correct copy of which is attached as EXHIBIT 3



1    and incorporated by this reference (the "February 2021 Demand Letter"). In the
2    February 2021 Demand Letter, Lincoln National repeated its demand that Mr.
3    Foglietta reimburse Lincoln National for the $135,444.20 in alleged overpayments.
4    In this letter, Lincoln National added an ominous warning that if it did not receive
5    payment within 30 days, Mr. Foglietta's "file [would] be referred to our Recovery
6    Department for additional handling."

7           18.    As a result of these collection efforts by Lincoln National, Mr. Foglietta
8    retained legal counsel to represent him, McKennon Law Group, PC.  On April 24,
9    2021, McKennon Law Group sent a letter to Lincoln National, a true and correct
10   copy of which is attached as EXHIBIT 4 and incorporated by this reference
11   ("McKennon Letter").  In this letter, McKennon Law Group explained why Lincoln
12   National has no right to be reimbursed by Mr. Foglietta for any amount and
13   demanded that Lincoln National agree to cease and desist from its collection efforts,
14   both directly, and through its outside collection agency.

15          19.    Lincoln National responded to the McKennon Letter on or about May
16   26, 2021, by sending a fourth demand letter, a true and correct copy of which is
17   attached as EXHIBIT 5 and incorporated by this reference (the "May 2021 Demand
18   Letter").  In the May 2021 Demand Letter, Lincoln National repeated its demand for
19   Mr. Foglietta to reimburse it for $135,444.20 in alleged overpayments.  Lincoln
20   National claimed that its right to reimbursement is founded upon the following
21   language purportedly in the long-term disability insurance policy under which
22   Foglietta was receiving long-term disability benefits:

23          "OTHER INCOME BENEFITS means those benefits shown below:
24          . . .
25          "5.   Benefits under the United States Social Security Act . . .
26              as follows:
27              (a) disability . . . benefits for which the Insured Employee and any
28

    spouse or child is eligible, because of the Insured Employee's Disability or eligibility . . . .

 . . .

These Other Income Benefits . . . are benefits resulting from the same Disability for which a Monthly Benefit is payable under the Policy. An Insured Employee who may be entitled to some Other Income Benefit is required to actively pursue it.  If he or she does not, Policy benefits may be denied or suspended.

RIGHT OF RECOVERY.  If benefits have been overpaid on any claim; then full reimbursement to the Company is required within 60 days.  If reimbursement is not made; then the Company has the right to:

  1.  reduce future benefits until full reimbursement is made; and

  2.  recover such overpayments from the Insured Employee or his or her estate.

Such reimbursement is required whether the overpayment is due to:

  1.  the Company's error in processing a claim;

  2.  the Insured Employee's receipt of Other Income Benefits;

  3.  fraud or any other reason."

  20. Mr. Foglietta disputes that any overpayments of disability benefit payments were made to him.  In any event, Mr. Foglietta no longer has control or possession of any of those long-term disability benefit payments, or any of the SSDI Benefit payments, and when he still had the long-term disability benefits and SSDI Benefit payments, they were spent or co-mingled with his other funds.

  21. Lincoln National has sent the four collection letters to Mr. Foglietta described above purportedly based on an alleged contractual right to reimbursement quoted in its May 2021 Demand Letter.  Lincoln National's purpose in sending these letters has been to coerce and intimidate Mr. Foglietta into paying $135,444.20 to Lincoln National.



22. For the reasons discussed below, National Lincoln is not entitled to be paid any of the $135,444.20, or any other amount by Mr. Foglietta. Nonetheless, Mr. Foglietta alleges on information and belief that in the absence of injunctive relief or other appropriate equitable relief from this court, Lincoln National will continue to seek to collect reimbursement of this amount from Mr. Foglietta.

**FIRST CLAIM FOR RELIEF**

For Equitable Relief to Enjoin Acts Contrary to Law, for Declaratory Relief, for Breach of Fiduciary Duty and for Attorneys' Fees

29 U.S.C. Sections 1132(a)(3)(A), (a)(3)(B), (g)(1)

(Plaintiff against Lincoln National and Does 1 through 10)

23. Plaintiff incorporates the previous paragraphs as though fully set forth herein.

24. ERISA Sections 502(a)(3)(A) and 502(a)(3)(B), 29 U.S.C. Sections 1132(a)(3)(A) and 1132(a)(3)(B), permit a plan participant like Plaintiff to bring a civil action to obtain "other appropriate equitable relief," including to enjoin any act or practice which violates any provision of this subchapter, to enforce the terms of the plan, for declaratory relief or to obtain other appropriate equitable relief to redress such violations. *Bilyeu v. Morgan Stanley Long Term Disability Plan*, 683 F.3d 1083 (9th Cir. 2012); *Wong v. Aetna Life Ins. Co.*, 51 F.Supp.3d 951 (S.D. Cal. 2014) (relying upon *Bilyeu*).

25. The Plan under which Mr. Foglietta received benefits was an employee welfare plan governed by ERISA. Among the subjects governed by ERISA is the extent of an insurer's right to seek reimbursement of overpayment of benefits from an employee participant. *Bilyeu, supra*; *Wong v. Aetna Life Ins. Co.*, *supra*.

26. Pursuant to 29 USC Section 1132(a)(3), a civil action may be brought by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain



1  other appropriate equitable relief (i) to redress such violations or (ii) to enforce any
2  provisions of this subchapter or the terms of the plan. *Id.*
3       27.   In *Bilyeu*, the Ninth Circuit explained that, under ERISA, an insurer
4  can only obtain reimbursement of an overpayment of plan benefits if the insurer
5  proves three elements: "First, there must be a promise by the beneficiary to
6  reimburse the fiduciary for benefits paid under the plan in the event of a recovery
7  from a third party. Second, the reimbursement agreement must 'specifically
8  identif[y] a particular fund, distinct from the [beneficiary's] general assets,' from
9  which the fiduciary will be reimbursed. [Citation omitted.] Third, the funds
10 specifically identified by the fiduciary must be "within the possession and control of
11 the [beneficiary].'" *Bilyeu*, *supra*, 683 F.3d at 1092-1093; *Wong*, *supra*, 51
12 F.Supp.3d at 968-969  In *Bilyeu*, as here, the insurer sought reimbursement of
13 overpaid long-term disability benefits resulting from SSDI benefits received by the
14 insured.  The Court held that the insurer failed the first part of the test, because the
15 Social Security Act prohibits an insured from assigning SSDI benefits and prohibits
16 an insurer from attaching social security benefits.  See 42 U.S.C. § 407(a).  *Id.*  In
17 *Bilyeu*, the insurer also failed the third part of the test, as it failed to prove that the
18 SSDI benefits that caused the overpayments were still in the insured's possession
19 and control and had not been commingled with the insured's general funds. *Id*
20   28.  Even if an insurer has an alleged contractual reimbursement provision like
21 Lincoln National is asserting, an equitable lien is the only claim for relief an ERISA
22 insurer may assert to recoup such an overpayment of disability benefits to its
23 insured.  The equitable lien may only be placed on the specific fund agreed upon in
24 the insurer's reimbursement agreement with its insured.  *Id.*  In this action, as in
25 *Bilyeu* and *Wong*, SSDI benefits are the only possible fund identified in the Lincoln
26 National reimbursement clause.  But those benefits do not satisfy the second part of
27 the test, because SSDI benefits cannot be assigned or attached.  Since Lincoln
28

1  National cannot meet the second part of the test, it is not entitled to seek recovery of
2  the alleged overpayments on the basis of an equitable lien.
3      29.    Over the past 14 years, Mr. Foglietta had already spent the long-term
4  disability benefits Lincoln National paid him, and Mr. Foglietta and his family had
5  already spent all of the SSDI Benefit payments made to him and his dependents.
6  Since Mr. Foglietta no longer has any of those funds, ERISA bars Lincoln National
7  from seeking reimbursement of any alleged overpayments resulting from those
8  SSDI Benefit payments.
9      30.    Under ERISA, illegally pursuing this overpayment debt is a breach of
10 Lincoln National's fiduciary duties under ERISA Section 1132(a)(3)(B).  *Id.*
11     31.    ERISA preempts any state law claims Lincoln National could otherwise
12 pursue, including a breach of contract or similar claim against Mr. Foglietta.  *Bui v.*
13 *American Telephone & Telegraph Co. Inc.* (9th Cir. 2002) 310 F.3d 1143, 1152
14 ("ERISA preempts Bui's contract claims. These claims do not merely reference the
15 ERISA plan, they require its construction because the contract allegedly breached is
16 the ERISA plan itself. Accordingly, ERISA preempts the contract claims.")
17     32.    ERISA also bars Lincoln National from using any state law collection
18 remedy to enforce its alleged reimbursement right, and the absence of any other
19 legal remedy is insufficient to overcome ERISA preemption.  *See Bast v. Prudential*
20 *Ins. Co. of America* (9th Cir. 1998) 150 F.3d 1003, 1010, as amended (Aug. 3, 1998)
21 ("ERISA preempts state law claims, even if the result is that a claimant, relegated to
22 asserting a claim only under ERISA, is left without a remedy. The focus is on
23 ERISA. If it does not provide a remedy, none exists.")
24     33.    Lincoln National's past and expected future efforts to coerce Mr.
25 Foglietta into paying the $135,444.20 allegedly overpaid violate Lincoln National's
26 fiduciary duties owed under ERISA in two ways.  Lincoln National is seeking to
27 coerce Mr. Foglietta into paying reimbursement from his general funds in violation
28 of ERISA.  In this regard, Lincoln National's Policy language, as quoted in its May



26 letter, purports to give Lincoln National a legal right "to recover such overpayments from the Insured Employee or his or her estate." This language is unlawful and unenforceable under ERISA, since it purports to give Lincoln National a right to seek reimbursement from beyond the specific funds that caused the overpayment –the SSDI Benefits paid in relation to Mr. Foglietta's dependents.

34. Lincoln National's Policy language, as quoted in its May 26 letter, purportedly giving Lincoln National a legal right "to reduce future benefits until full reimbursement is made," is also unlawful and unenforceable under ERISA. Mr. Foglietta alleges on information and belief that in the event he seeks and achieves reversal of Lincoln National's termination of his long-term disability benefits, then Lincoln National intends to deduct the alleged reimbursement owed from future disability benefits owed to him. Mr. Foglietta also alleges that Lincoln National is using this threat as a tool to intimidate Mr. Foglietta into foregoing his right to appeal Lincoln National's termination of his long-term disability benefits.

35. A controversy now exists between the parties regarding whether Lincoln National has a right to pursue any legal action or collection effort to recover the alleged overpayment of past disability benefits from Mr. Foglietta. Lincoln National alleges that it has the right to seek reimbursement under the quoted language from its insurance policy. Mr. Foglietta alleges that ERISA forbids Lincoln National from enforcing this Policy language and also forbids Lincoln National from taking any action to seek reimbursement of any amount of the alleged overpayments from Mr. Foglietta, including but not limited to sending collection demand letters, utilizing an outside collection agency, or threatening, filing, or prosecuting a lawsuit.

36. Mr. Foglietta will suffer irreparable harm unless this Court exercises its equitable power to resolve this controversy in his favor, and to enjoin Lincoln National from any further effort to collect any amount of the $135,444.20 or any other amount from Mr. Foglietta.



37. As a direct and proximate result of Lincoln National's unlawful efforts to collect the $135,444.20 from Mr. Foglietta, in breach of its duties as an ERISA fiduciary, Mr. Foglietta has been required to incur attorneys' fees to pursue this action and is entitled to reimbursement of these fees pursuant to 29 U.S.C. Section 1132(g)(1).

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for the following relief against all Defendants:

1. That this Court issue a declaratory judgment holding that the following alleged language in Lincoln National's insurance policy is unlawful and unenforceable under ERISA to the extent Lincoln National seeks to obtain reimbursement of alleged overpayment of past disability benefits – resulting from SSDI benefits paid to Mr. Foglietta or his dependents-- from any funds or source other than the past disability benefits that included an overpayment, and to the extent the funds from those past disability benefits are still in the insured participant's possession and not commingled with other funds:

    "RIGHT OF RECOVERY. If benefits have been overpaid on any claim; then full reimbursement to the Company is required within 60 days. If reimbursement is not made; then the Company has the right to:

    1. reduce future benefits until full reimbursement is made; and
    2. recover such overpayments from the Insured Employee or his or her estate."

2. That this Court issue a permanent injunction enjoining Lincoln National and any person, agent, employee, or outside collection agency or other person or entity working on behalf of Lincoln National from taking any action to collect or seek reimbursement of any amount from Mr. Foglietta, including, by way of example, but without limitation, sending any written





communication or correspondence by any media, making any telephone calls to Mr. Foglietta (or to anyone else in relation to trying to collect from Mr. Foglietta), making any in-person demand, placing any lien on any personal or real property of Mr. Foglietta, filing any lawsuit against Foglietta seeking collection or reimbursement, and reporting Mr. Foglietta's alleged reimbursement obligation to any credit reporting agency;

3. For costs and reasonable attorneys' fees pursuant to 29 U.S.C. Section 1132(g); and

4. For such other and further relief as this Court deems just and proper.

Dated:  October 1, 2021                          **McKENNON LAW GROUP PC**

By: _____
ROBERT J. McKENNON
LARRY CALDWELL
Attorneys for Plaintiff,
Michael Foglietta